## WILLIAM C. FOWLER *vs.* McLAREN F. PICKERING.

Suffolk. March 12. — October 22, 1875. AMES & ENDICOTT, JJ., absent.

The owner of a vessel chartered it, retaining the necessary room for the crew, to A. to bring a cargo to the port of B. or the port of G., the port to be named before clearing. A. named B. as the port and the vessel sailed on said voyage. Subsequently an agreement was made between the owner and A. by which A. was to pay all extra charges incurred if he should elect to have the destination of the vessel changed from B. to G. Before the vessel arrived at G., a letter was sent by A. without the knowledge of the owner of the vessel, to the office of the pilots in B., directed to the master of the vessel, requesting him to go to G. This letter was delivered at sea to the master by a pilot, and an agreement was made by which the pilot was to receive for taking the vessel to G. as much as he would have been entitled to as pilotage, if he had taken the vessel to B. This was paid. The pilot then brought an action against the owner of the vessel to recover compensation for taking the letter to the master, and at the trial put in evidence of a local usage in the port of B. for pilots to charge and receive a pilotage fee for delivering such a letter to the master of a vessel. The judge instructed the jury that in order to charge the defendant they must find that either the owner or master had knowledge of the usage, and that if they should find that either had such knowledge and

should find the usage to be proven they must find for the plaintiff. *Held*, on exceptions taken by the defendant, that the contract relied on, if proved, was within the scope of the master's authority and would bind the owner; and that the contract between the owner and the charterer in respect to paying for extra charges, in case of a change of port, did not affect the defendant's liability to the plaintiff. *Held*, *also*, that knowledge of the usage, on the part of the master, must be shown, and that it was not enough to show that the defendant had knowledge of the usage. *Held*, *also*, on the issue whether an implied contract was to be inferred from the act of the master in going to G., that the contract made between him and the pilot, about taking the vessel in, might have a material bearing.

CONTRACT to recover $90 for services rendered by a branch pilot of Boston, in delivering to the master of the ship Anna Decatur the following letter directed to the captain, dated New York, May 29, 1873, and signed "Woodruff & Robinson:" "Dear Sir,—You will please proceed to Gloucester with your vessel and there report to Messrs. John Pew & Son, who will receive your cargo salt."

At the trial in the Superior Court, before *Pitman*, J., the plaintiff proved that the defendant was at the times here mentioned a part owner of the ship Anna Decatur; and that the plaintiff was and still is a branch pilot for the port and harbor of Boston, and received the above letter late in May or early in June, 1873; that he carried the letter in his pilot boat and delivered it to the master of the ship off the Highlands of Cape Cod, and thereupon under a special oral agreement, hereafter named, piloted the ship into the harbor of Gloucester, and claimed to recover a fee of $90 for delivering said letter. The plaintiff called several branch pilots of the harbor and port of Boston, who had been such for many years; all of whom testified that there is and long has been a custom and usage among the branch pilots of the harbor and port of Boston, to charge and receive a pilotage fee for delivering a letter such as the above to the master of a vessel bound to Boston, which pilotage fee is equal in amount to the regular fee provided by law for piloting such vessel into the harbor of Boston. These witnesses testified that they never inquired from whom the letter came, and that they always looked to the master or owners of the vessel for this fee whenever the port was changed in consequence of the letter. There was no other evidence offered upon this point except that two of the witnesses testified that they understood or had heard that a corresponding custom exists among the

pilots of the port of New York; and except that each witness admitted that he knew of no case where this fee had been charged to and paid by the master or owner of the ship, where the letter came from the consignee or owner of the cargo or charterer, they, the pilots, not caring whom the letter was written by, provided that the captain recognized and acted upon it. It was admitted that the plaintiff and the master of the ship made an agreement, when the plaintiff boarded the ship and delivered the letter, that if the plaintiff would undertake to try to pilot the ship into Gloucester he should receive therefor the regular fee for piloting the ship into Boston; and it was admitted that the master gave to the plaintiff the order following, dated Gloucester, June 2, 1873, directed to the defendant:

"Please pay to bearer the customary Boston pilotage for bringing the Anna Decatur from sea to this port. The boat No. 6 gave orders off Cape Cod;" and that, upon that order, this latter fee had been paid the plaintiff by the defendant.

One Hayden, a witness for the defendant, testified, on cross-examination, that the words, "The boat No. 6 gave orders off Cape Cod," was the usual and customary authority from a master to an owner to pay letter pilotage, for the last fifteen years, which was uncontradicted.

The plaintiff did not rely upon any agreement upon which to recover this additional fee of $90 now sued for, but relied solely upon the said custom or usage.

It was further proved that the ship was chartered, with the exception of the cabin and necessary room for the crew, and storage of provisions, sails and cables, by Messrs. Woodruff & Robinson, of New York, to proceed to Cadiz, Spain, and there to load a cargo of salt, and to proceed therefrom "to Gloucester or Boston, Mass., U. S. A., port to be named before clearing;" and that said ship at the times here mentioned was proceeding from Cadiz, with the said cargo on board, bound to Boston, which port had been named by the charterers before clearing; that the charterers, after the vessel had departed from Cadiz, sent the foregoing letter to their agent in Boston, one Byrnes, who forwarded it to the pilots' office, where it was received by the plaintiff; that this was done without the knowledge or consent of the owners of the ship, the defendant being absent from the country; and that the

plaintiff, when he received and delivered the letter, did not know and did not inquire from whom the letter came.

The master of the ship testified that he resided at Saco, Maine, that he had been master of a ship for a little over ten years; that during that time he had been once, before this passage, into the port of Boston, and that previously to his taking command he had been several times into the port of Boston; that he did not know of any usage or custom such as the plaintiff relied on, or any other usage or custom relating to charging for putting a letter on board a vessel; and that by receiving the letter he changed his port of destination from Boston to Gloucester. A letter written by the defendant was introduced, in which he stated that he recognized a custom in the port of Boston for the pilot putting a letter on board a vessel to charge and receive a fee therefor from the master or owner of the ship, but that he was not aware, and did not understand, that there was any custom or usage to charge such fee to the shipowner or master when the letter was sent by the owner of or representative of the cargo, and not by the owner or agent of the ship.

The defendant also testified that he made an agreement with the charterers that they should pay all extra charges incurred, provided they should elect to have the ship change her port of destination from Boston to Gloucester. There was no other evidence bearing upon the question of knowledge of the defendant or other owner or master of a custom or usage. The defendant testified, without contradiction, that it was of no service or benefit to the ship or her owners for her destination to be changed; and that it would have been of pecuniary benefit to them if she had been allowed to proceed to Boston, whither she was bound. There was no other material evidence in the case bearing upon these questions.

The defendant asked the judge to rule that the plaintiff could not maintain this action: " 1st. Because upon the evidence the jury would not be warranted in finding a custom or usage under which the defendant could be charged, as the letter was sent by the owner of, or agent for, the cargo, and without the knowledge and consent of the master, owner or owners of the ship. 2d. That if such a finding would be warranted upon the evidence, such a usage or custom would be unreasonable, and that such a

usage or custom would be void in law. 3d. That the usage relied upon is a local usage, and that there was no evidence that it was or is brought home to the knowledge of the defendant or the master or other agent or owner of the ship." But the judge declined so to rule, and instructed the jury that the usage claimed is a local usage, and that in order to charge the defendant they must be satisfied that either the defendant or the master had knowledge thereof; and that if they should find that either of them had such knowledge, then it was for the jury to say whether a usage to charge the shipowner in case the letter is sent by the charterer or other agent for or owner of the cargo, was proven; and that if they found such a usage to be proven, they must find for the plaintiff. The jury found for the plaintiff for $90 ; and the defendant alleged exceptions to the rulings and refusals to rule as requested.

*F. Goodwin*, for the defendant.

No counsel appeared for the plaintiff.

WELLS, J. The defendant is liable in this action, if at all, by reason of some contract, express or implied, between the plaintiff and the master of the vessel acting within his authority, as master, to bind the owners. The contract relied on in this case, if otherwise established, was within the scope of the master's authority, and would be binding upon the owners. *Grant* v. *Norway*, 10 C. B. 665. *Bliss* v. *Ropes*, 9 Allen, 339. Story on Agency, § 116. The agreement between the defendant and the charterers, that the latter " should pay all extra charges incurred, provided they should elect to have the ship change her port of destination from Boston to Gloucester," would not affect the question of the defendant's liability in the first instance to the parties dealing with the master in matters affecting the navigation of the ship.

Upon the question whether there was an implied promise to remunerate the plaintiff for the service rendered by him in delivering to the master a communication relative to the voyage, by reason of which he was led to change his port of destination, the alleged custom or usage of the port was competent as evidence ; not because the usage alone would impose or prove a liability, but as affording ground for the inference that by receiving and availing himself of the communication, and acting in accordance

with its directions or request, the master accepted the service as rendered to the vessel. The alleged usage being a local one, it was rightly ruled that knowledge of its existence must be shown. But, in determining whether a promise is to be implied from the conduct of the master, it is his knowledge of the local usage relied on that is important, and not the knowledge of his principal who took no part in the transaction. The ruling at the trial was erroneous in allowing knowledge of the local usage by the owner on shore to affect the inferences to be drawn from the conduct of the master at sea. The ruling was also erroneous in directing the jury " that if they found such a usage to be proven they must find for the plaintiff." It was still a question of fact whether, in view of such a usage, known to the master, a promise to pay for delivering the letter, as a distinct service, is to be inferred from the conduct of the parties. And upon this question the express agreement made between the master and the plaintiff when the latter boarded the ship and delivered the letter, " that if the plaintiff would undertake to try to pilot the ship into Gloucester he should receive therefor the regular fee for piloting the ship into Boston " might have a material bearing.

*Exceptions sustained.*